UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH CASTRO, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>OMTA TECH INC. d/b/a OMTA TECH, OMER TALE, individually, SAHIM [LAST NAME UNKNOWN], individually, ILHAM OZGAN, individually JRM CONSTRUCTION MANAGEMENT, LLC, CLUNE CONSTRUCTION CO., and MICHILLI CONSTRUCTION + CONSULTING, LLC,<br><br>Defendants. | Civil Action No.: 26-cv-00133-LJL<br><br>**FIRST AMENDED CLASS AND COLLECTIVE ACTION FIRST AMENDED COMPLAINT** |

Plaintiff KENNETH CASTRO, individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself, and upon information and belief as to other matters, alleges as follows:

## INTRODUCTION

1. This is a wage-and-hour and retaliation action arising from the systematic failure of OMTA TECH INC. d/b/a OMTA TECH (hereinafter "OMTA"), OMER TALE (hereinafter "Tale"), SAHIM LNU (hereinafter "Sahim"), and ILHAM OZGAN (hereinafter "Ozgan") (collectively, "Defendants"), to pay legally required wages to Plaintiff and similarly situated electricians and apprentice electricians employed on commercial construction projects throughout New York.

2. Defendants misclassified Plaintiff and other workers as independent contractors, implemented a company-wide, time-shaving policy and failed and refused to pay overtime

compensation for hours worked in excess of 40 per week, paid wages late and irregularly, failed to provide wage notices and accurate wage statements required by law, and retaliated against workers who complained about unpaid wages.

3.     Plaintiff brings this action individually, on behalf of all similarly situated employees, for their rights being violated pursuant to the Fair Labor Standards Act (hereinafter "FLSA") and New York Labor Law (hereinafter "NYLL").  As a result of Defendants' blatant improper employment practices, Plaintiff and those similarly situated with him are entitled to substantial compensatory, liquidated and punitive damages.

## THE IMPROPER EMPLOYMENT PRACTICES

4.     Defendants misclassify their employees, and, among others, fail to pay them minimum wages, premium overtime compensation for all of the hours they work in excess of 40 hours per workweek, timely wages, and spread-of-hours pay when the length of their workday is greater than 10 hours.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

6.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.     This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

8.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

2

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants conduct business in this District and a substantial portion of the events giving rise to the claims occurred here.

10.     Defendants employed workers on multiple commercial construction projects located in Manhattan and other parts of New York City, including within this District.

## THE PLAINTIFF'S CLAIMS

11.     Plaintiff KENNETH CASTRO, (hereinafter "Castro" or "Plaintiff") brings this action on behalf of himself and all similarly situated current and former electricians who elect to opt-in to this action pursuant to 29 U.S.C. § 216(b), the collective action provisions of the FLSA, 29 U.S.C. §§ 201 *et seq.*

12.     Plaintiff also asserts New York State law claims on behalf of himself and all similarly situated current and former electricians pursuant to Federal Rule of Civil Procedure Rule 23 to remedy violations of the NYLL, Article 6, §§ 190 *et seq.,* and Article 19, §§ *650 et seq.,* and the supporting New York State Department of Labor Regulations.

## THE PARTIES

**Plaintiff**

13.     Castro is an adult individual who is a resident of New York.

14.     Castro was employed by Defendants as an electrician from October through December 2025.

15.     Castro is a covered employee within the meaning of the FLSA and the NYLL.

16.     A written consent form for Castro was filed with the original Class Action First Amended Complaint (hereinafter "First Amended Complaint") (Dk. 1).

3

17.    Plaintiff performed manual electrical labor on commercial construction sites, including installing electrical components, preparing materials, transporting tools, and performing tasks assigned by foremen and supervisors.

18.    Plaintiff was paid on an hourly basis but was classified and paid as an independent contractor.

19.    Plaintiff's employment with Defendants ended on or about December 15, 2025.

**Defendants**

20.    Defendants jointly employed Plaintiff and similarly situated employees at all times relevant.

21.    Each Defendant has had substantial control over Plaintiff's and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

**Corporate Defendant**

22.    OMTA is a New York-based electrical contracting business and is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed Plaintiff and similarly situated employees.

23.    OMTA provided electrical labor and services on large commercial construction projects throughout New York City.

24.    OMTA maintained offices, storage facilities, and payroll operations in New York City.

25.    At all relevant times, OMTA has maintained control, oversight, and direction over Plaintiff and similarly situated employees, including timekeeping, payroll and other employment practices that applied to them.

26.     OMTA applies the same employment policies, practices, and procedures with respect to payment of wage, overtime compensation, timing of payment, spread-of-hours pay, and the making of unlawful deductions to all electrician tradepersons.

27.     At all relevant times, OMTA's annual gross volume of sales made or revenue generated exceeded $500,000.00.

**Individual Defendant Tale**

28.     Upon information and belief, Tale is a resident of the State of New York, and is, at all relevant times was, an officer, director, president, owner and/or principal of OMTA.

29.     Tale is identified by the New York State Department of State Division of Corporations as a "Chief Executive Officer" for OMTA, and the premises located at 22 Wave Street, Staten Island, NY 10301.

30.     OMTA also identified for contractor shipments a secondary address located at 49 West 27th Street, East Mezzanine, NY, NY 10001.

31.     At all relevant times, Tale had the power over personnel decisions at OMTA, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

32.     At all relevant times, Tale had power over payroll decisions at OMTA, including the power to retain time and/or wage records.

33.     At all relevant times, Tale has been actively involved in managing the day-to-day operations of OMTA.

34.     At all relevant times, Tale had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

5

35.    During Plaintiff's employment at OMTA, Tale was generally present at the jobsite's multiple times per week and repeatedly held meetings with electricians regarding work assignments. Tale supervised foremen and general foremen on OMTA job sites.

36.    At all relevant times, Tale had the power to transfer the assets and/or liabilities of OMTA.

37.    At all relevant times, Tale had the power to declare bankruptcy on behalf of OMTA.

38.    At all relevant times, Tale had the power to enter into contracts on behalf of OMTA.

39.    At all relevant times, Tale had the power to close, shut down, and/or sell OMTA.

40.    OMTA is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, employed and/or jointly employed Plaintiff and similarly situated employees.

**Individual Defendant - Sahim**

41.    Defendant Sahim was a general foreman for OMTA.

42.    Sahim supervised Plaintiff and other electricians on job sites.

43.    Sahim reported directly to Tale regarding labor needs and worker performance.

44.    At all relevant times, Sahim had the power to assign daily tasks, enforced start times, and monitored attendance.

45.    At all relevant times, Sahim has had the power over personnel decisions at OMTA, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

46.    At all relevant times, Sahim has had power over payroll decisions at OMTA, including the power to retain time and/or wage records.

47.    At all relevant times, Sahim has been actively involved in managing the day-to-day operations of OMTA.

6

48.    At all relevant times, Sahim has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

**Individual Defendant - Ozgan**

49.    Defendant Ozgan exercised supervisory and payroll-related authority on behalf of OMTA.

50.    Defendant Ozgan participated in decisions regarding payment of wages to workers.

51.    Each individual Defendant acted directly or indirectly in the interest of OMTA Tech in relation to Plaintiff and similarly situated workers.

**General Contractor Defendants**

52.    Upon information and belief, Defendant JRM Construction Management, LLC (hereinafter "JRM") is a business entity authorized to do business in the State of New York and, at all relevant times, acted as the construction manager and/or contractor on projects at which Plaintiffs and similarly situated OMTA workers performed labor, including but not limited to projects located at 610 Fifth Avenue, Manhattan, New York and 717 Fifth Avenue, Manhattan, New York.

53.    Upon information and belief, Defendant Clune Construction Co. (hereinafter "Clune") is a business entity authorized to do business in the State of New York and, at all relevant times, acted as the general contractor, construction manager, and/or contractor on the Penn Station / Penn Plaza project at which Plaintiffs and similarly situated OMTA workers performed labor.

54.    Upon information and belief, Defendant Michilli Construction + Consulting, LLC (hereinafter "Michilli") is a business entity authorized to do business in the State of New York and, at all relevant times, acted as the general contractor, construction manager, and/or contractor

7

on the Hudson Yards project at which Plaintiffs and similarly situated OMTA workers performed labor.

55.    Upon information and belief, OMTA acted as a subcontractor at one or more of the above-referenced construction projects under, by, or for JRM, Clune, and/or Michilli (collectively, JRM, Clune, and Michilli are hereinafter referred to as "General Contractor Defendants"), and Plaintiffs performed labor on those projects for the benefit of those upstream construction entities.

56.    Upon information and belief, General Contractor Defendants each qualify as a "contractor" within the meaning of NYLL § 198-e because each made or took a construction contract and utilized subcontracted labor, including labor supplied by OMTA, in connection with construction work performed by Plaintiffs and similarly situated workers.

57.    Upon information and belief, the wage-and-hour violations alleged herein, including unpaid straight-time wages, unpaid overtime wages, off-the-clock work, late payment of wages, unlawful deductions, and wage notice and statement violations, were incurred by OMTA while Plaintiffs and similarly situated workers were performing labor on projects made, taken, managed, coordinated, or supervised by one or more of JRM, Clune, and Michilli.

58.    At all relevant times, General Contractor Defendants were each covered entities within the meaning of NYLL § 198-e and are liable for debts resulting from the labor law violations of subcontractors at any tier acting under, by, or for them.

59.    At all relevant times, General Contractor Defendants' respective annual gross volume of sales made or revenue generated exceeded $500,000.00.

**PLAINTIFF'S FACTUAL ALLEGATIONS**

8

60.     Plaintiff was hired by Defendants on or about October 9, 2025, as an apprentice electrician to perform manual electrical labor on Defendants' commercial construction projects throughout New York City.

61.     At hire, Defendants set Plaintiff's hourly rate at approximately $21.00 per hour, assigned Plaintiff to specific job sites, and required Plaintiff to report to foremen designated by Defendants, thereby exercising control over the manner, timing, and location of Plaintiff's work.

62.     Despite paying Plaintiff by the hour and directing his daily work, Defendants classified Plaintiff as an independent contractor and compensated him outside a lawful payroll system, including by issuing checks and *ad hoc* electronic transfers.

63.     Defendants did not withhold payroll taxes from Plaintiff's wages, did not issue Plaintiff a Form W-2, and did not provide Plaintiff with a written wage notice at the time of hire.

64.     Although Defendants classified Plaintiff as an independent contractor, Plaintiff did not operate an independent business, did not advertise services to the public, did not negotiate rates of pay, and was economically dependent on Defendants for work.

65.     Defendants required Plaintiff to report to specific job sites designated by Defendants and to begin work at start times set by Defendants, including early morning start times.

66.     Defendants enforced attendance through foremen and general foremen, including Sahim, who assigned daily tasks, monitored attendance, and disciplined workers for perceived tardiness.

67.     Defendants required Plaintiff to arrive before scheduled start times to complete security procedures and pre-shift tasks, including waiting in lines, obtaining access credentials, and preparing tools, without compensation for that time.

68.     Defendants controlled the sequence, manner, and means of Plaintiff's work through supervisors on site, retained authority to discipline and terminate workers, and exercised that authority in response to First Amended Complaints about unpaid wages.

69.     Defendants required Plaintiff and his colleagues to download on their personal mobile phones, and use the EZ Clocker application to record their time worked on Defendants' projects.

70.     Defendants had access to the hours recorded by Plaintiff and his colleagues because Defendants required the use of EZ Clocker and retained the ability to review and control the recorded entries.

71.     Although Defendants reviewed and controlled the time entries submitted through EZ Clocker, Defendants did not pay workers according to those recorded hours.

72.     Instead, Defendants paid Plaintiff and similarly situated workers for no more than 40 hours per week, regardless of the actual number of hours recorded and worked.

73.     Defendants further reduced compensable time by deducting time for security wait time and lunch and coffee breaks even when workers worked through those breaks and by reducing recorded time when workers arrived minutes before scheduled start times.

74.     Plaintiff regularly worked in excess of 40 hours per week, including weeks in which he worked between 60 and 70 hours.

75.     Defendants required its employees, including Plaintiff and his electrician tradesperson colleagues, to work early mornings, late evenings, weekends, and holidays, at Defendants' direction and for Defendants' benefit.

76.     On numerous workdays, Plaintiff's workday exceeded 10 hours from the time Plaintiff was required to arrive at the job site until the time Plaintiff was permitted to leave.

10

77.    These extended workdays included unpaid pre-shift time spent waiting in security lines, obtaining access credentials, and preparing tools, as well as post-shift work required by Defendants.

78.    Defendants did not pay Plaintiff or similarly situated workers an additional hour of pay at the applicable minimum wage rate for days in which the spread of hours exceeded 10 hours.

79.    Despite requiring and permitting Plaintiff to work overtime hours, Defendants failed to pay overtime compensation at one and one-half times Plaintiff's regular rate for hours worked over 40 in a workweek.

80.    Defendants' failure to pay overtime resulted from Defendants' uniform policy of capping paid hours at 40 per week, irrespective of hours actually worked and recorded.

81.    Defendants were required to pay Plaintiff wages on a weekly basis when wages were paid timely.

82.    Defendants routinely failed to pay wages when due, instead paying wages weeks, sometimes months, after they were earned or not paying certain pay periods at all.

83.    On multiple occasions, Defendants issued only partial payments toward wages owed and acknowledged that additional wages remained unpaid.

84.    Defendants used irregular payment methods, including mobile and electronic transfers such as Zelle, rather than a lawful payroll system, further evidencing Defendants' control over the timing and amount of wage payments.

85.    Defendants failed to provide Plaintiff and his colleagues with wage statements that complied with NYLL § 195(3).

86.    Checks issued to Plaintiff reflected incorrect wage amounts and omitted required information, including hours worked, overtime hours, rates of pay, gross wages, and deductions.

Class Action Amended Complaint OmTa - Final 4.30.26 4919-8859-9719 v.1

87.     Defendants failed to provide Plaintiff with any written wage notice at the time of hire or thereafter.

88.     Plaintiff complained to Defendants about unpaid overtime and late wages, including by raising concerns directly with supervisors and management in or around December 2025.

89.     Other electricians and apprentice electricians employed by Defendants similarly complained about unpaid wages and overtime.

90.     In response to these First Amended Complaints, Defendants threatened workers with loss of work and demanded that workers continue working despite unpaid wages.

91.     After Plaintiff complained about unpaid wages and refused to continue performing uncompensated work, Defendants terminated Plaintiff's employment on or about December 15, 2025.

92.     Defendants terminated Plaintiff because of his protected First Amended Complaints regarding wage violations, in retaliation for engaging in protected activity.

93.     Plaintiff and similarly situated workers performed electrical work on large commercial construction projects, including projects located at or around Penn Station, Fifth Avenue, East 28th Street in Manhattan, Wythe Avenue, and other New York City locations. Specifically, these projects were/are located at, upon information and belief: (a) One and Two Penn Plaza, New York, New York; (b) 610 Fifth Avenue, New York, New York; (c) 717 Fifth Avenue, New York, New York; (d) 28 East 28th Street, New York, New York, including the American Eagle retail location at approximately 63 Madison Avenue; (e) 1 Wythe Avenue, Brooklyn, New York; and (f) 49 West 27th Street, New York, New York.

94.    During the relevant period, Plaintiffs and similarly situated workers were assigned to multiple commercial construction projects in Manhattan, including but not limited to:

    a.  a project located at 610 Fifth Avenue, Manhattan, New York, which upon information and belief was being managed and/or contracted by JRM;

    b.  project located at 717 Fifth Avenue, Manhattan, New York, which upon information and belief was being managed and/or contracted by JRM;

    c.  the Penn Station / Penn Plaza project, which upon information and belief was being managed, coordinated, and/or contracted by Clune; and

    d.  the Hudson Yards project, which upon information and belief was being managed, coordinated, and/or contracted by Michilli.

95.    Upon information and belief, OMTA supplied labor to those projects and assigned Plaintiffs and similarly situated workers to perform electrical and related construction labor there.

96.    The same unlawful pay practices alleged herein occurred while Plaintiffs and similarly situated workers were assigned to those projects, including but not limited to the failure to pay for all hours worked, failure to pay overtime premiums, misclassification as independent contractors, delayed or partial payments, and other wage-related violations described in this First Amended Complaint.

97.    Upon information and belief, the wages and wage supplements due to Plaintiffs and similarly situated workers for labor performed on those projects were debts incurred by OMTA while acting as a subcontractor under, by, or for JRM, Clune, and/or Michilli within the meaning of NYLL § 198-e.

98.    These projects involved interstate commerce, including, upon information and belief, materials, equipment, and coordination with out-of-state vendors and contractors.

99.    Defendants operated as subcontractors on these projects, including on projects managed by construction managers identified herein, and coordinated labor across multiple sites simultaneously.

100.    Defendants employed at least 50 current and former apprentice electricians and full-time electricians during the relevant period.

101.    Defendants paid different hourly rates to workers based on experience, including rates of approximately $22.00, $28.00, $33.00, and $35.00 per hour, but applied the same unlawful overtime and pay practices to all workers.

102.    One worker is owed multiple weeks of wages and overtime and left Defendants' employment after not being paid.

103.    Other workers are owed wages spanning several weeks and were required to continue working despite unpaid wages.

104.    Defendants' pay practices are consistent across job sites and are discussed openly among workers.

## COLLECTIVE ACTION ALLEGATIONS

105.    Plaintiff brings the FLSA claims, on behalf of himself and all similarly situated persons who work or have worked as electrical tradespersons including electricians, helpers, and apprentices at OMTA in New York City, who elect to opt-in to this action (hereinafter "FLSA Collective").

106.    Defendants are liable under the FLSA for, *inter alia,* failing to timely and properly compensate Plaintiff and the FLSA Collective.

14

107.    Consistent with Defendants' policy and pattern or practice, Plaintiff and the FLSA Collective were not paid for all hours worked or the appropriate premium overtime compensation for all hours worked beyond 40 per workweek.

108.    Defendants were required to pay Plaintiff and similarly situated FLSA Collective workers on a weekly basis.

109.    Although Defendants purported to operate on a weekly pay schedule, Defendants routinely failed to pay wages when due, including by withholding wages for multiple weeks at a time.

110.    Multiple employees reported that they were not paid wages for periods extending three to four weeks after the wages were earned, despite continuing to perform work at Defendants' direction.

111.    Defendants' repeated failure to pay weekly wages when due was knowing and willful, as Defendants were aware of their pay obligations, tracked hours worked through the EZ Clocker application, and nevertheless chose to delay or withhold wages.

112.    Plaintiff and FLSA Collective workers were subject to the same pay policies and practices, including underpayment, late and irregular payment practices such as delayed wages and partial payments without overtime compensation.

113.    Defendants applied these policies uniformly across job sites.

114.    All of the work that Plaintiff and the FLSA Collective performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the FLSA Collective performed.

115.    The unlawful practices were centrally directed and controlled by Defendants.

116.    As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective.

117.    This policy and pattern or practice includes, but is not limited to:

    a.    willfully failing to pay its employees, including Plaintiff and the FLSA Collective, minimum wages for all hours worked and the appropriate premium overtime wages for all hours worked in excess of 40 hours in a workweek; and

    b.    willfully failing to record all of the time that its employees, including Plaintiff and the FLSA Collective, have worked for the benefit of Defendants.

118.    Defendants' unlawful conduct, as described in this First Amended Complaint, is pursuant to a corporate policy or practice of minimizing labor costs by misclassifying Plaintiff and the FLSA Collective as independent contractors, and failing to accurately, properly, and timely compensate Plaintiff and the FLSA Collective for the hours they work.

119.    Defendants are aware or should have been aware that federal law required them to pay Plaintiff and the FLSA Collective minimum wage for all of the hours they worked and overtime premiums for hours worked in excess of 40 hours per week.

120.    Plaintiff and the FLSA Collective perform or performed the same primary duties.

121.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

122.    There are many similarly situated current and former tradespersons who have been denied minimum wage and overtime compensation in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

123.    Those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

124.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of service awards upon resolution of this action.

125.    To the extent Plaintiffs' wage-and-hour claims arise from labor performed on projects made, taken, or managed by JRM, Clune, and/or Michilli, those defendants are liable under NYLL § 198-e for debts resulting from OMTA's actions or omissions as a subcontractor, including unpaid wages, unpaid overtime, unlawful deductions, liquidated damages, statutory penalties, attorneys' fees, costs, and such other relief as is authorized by law.

## CLASS ACTION ALLEGATIONS

126.    Plaintiff brings this First Amended Complaint under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of persons consisting of:

127.    All persons who work or have worked as tradespersons for Defendants in New York between 2019 and the date of final judgment in this matter (hereinafter "Rule 23 Class" and each a "Class Member").

128.    The members of the Rule 23 Class are so numerous that joinder of all members is impracticable.

129.    Upon information and belief, the size of the Rule 23 Class is at least 50 individuals.

130.    Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendants.

17

131.    Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

132.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

a.    whether Defendants violated NYLL Articles 6 and 19, and the supporting New York State Department of Labor Regulations;

b.    whether Defendants misclassified Class Members as independent contractors rather than employees;

c.    whether Defendants failed to pay Class Members complete and timely minimum wages for all of the hours they worked;

d.    whether Defendants correctly compensated Class Members for hours worked in excess of 40 hours per workweek;

e.    whether Defendants failed to provide Class Members with spread-of-hours pay when the length of their workday was greater than 10 hours;

f.    whether Defendants failed to keep true and accurate time and pay records for all hours worked by Class Members, and other records required by the NYLL;

g.    whether Defendants failed to furnish Class Members with proper annual wage notices, as required by the NYLL;

h.    whether Defendants failed to furnish Class Members with proper statements with every payment of wages, as required by the NYLL;

      i.    whether Defendants' policy of failing to pay Class Members was instituted willfully or with reckless disregard of the law; and

      j.    the nature and extent of class-wide injury and the measure of damages for those injuries.

133.    The claims of Plaintiff are typical of the claims of the Rule 23 Class he seeks to represent.

134.    All of the Class Members work, or have worked, for Defendants as tradespersons including electricians and apprentices for OMTA.

135.    Class Members enjoy the same statutory rights under the NYLL, including to be properly and timely compensated for all hours worked, to be paid spread-of-hours pay.

136.    Class Members have all sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

137.    Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

138.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

139.    Plaintiff understands that as class representatives, he assumes a fiduciary responsibility to the class to represent its interests fairly and adequately.

140.    Plaintiff recognizes that as class representatives, he must represent and consider the interests of the class just as he would represent and consider his own interests.

141.    Plaintiff understands that in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over the class.

19

142.    Plaintiff recognizes that any resolution of a class action must be in the best interest of the class.

143.    Plaintiff understands that in order to provide adequate representation, he must be informed of developments in litigation, cooperate with class counsel, and testify at deposition and/or trial.

144.    Plaintiff has retained counsel competent and experienced in complex class actions and employment litigation.

145.    There is no conflict between Plaintiff and the Rule 23 members.

146.    In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of service awards upon resolution of this action.

147.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

148.    The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' violations of the NYLL, as well as their common and uniform policies, practices, and procedures.

149.    Although the relative damages suffered by individual Class members are not *de minimis,* such damages are small compared to the expense and burden of individual prosecution of this litigation.

150.    Plaintiff lacks the financial resources to conduct a thorough examination of Defendants' timekeeping and compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages.

151.    In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

20

152.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## CLASS-WIDE FACTUAL ALLEGATIONS

153.    Plaintiff and the Rule 23 Class and the FLSA Collective (collectively included in "Class Members") have been victims of a common policy and plan perpetrated by Defendants that have violated their rights under the FLSA and the NYLL by denying them complete, correct and timely wages, proper overtime compensation, spread-of-hours pay, and proper wage notices and wage statements.

154.    At all times, Defendants' unlawful conduct, policies, and patterns or practices described in this First Amended First Amended Complaint have been willful.

### Wage and Hour Violations

155.    As part of their regular business practice, Defendants have intentionally, willfully and repeatedly harmed Class Members by engaging in a pattern, practice, *and/or* policy of violating the FLSA and the NYLL as described in this First Amended Complaint.  This pattern, practice, and/or policy includes, but is not limited to the following:

a.  failing to pay Class Members at least the applicable minimum hourly wage rate free and clear under the FLSA and the NYLL for all hours worked;

b.  failing to pay Class Members proper overtime compensation for the hours they worked in excess of 40 hours in a workweek;

c.  failing to pay Class Members spread-of hours pay for workdays of 10 hours or more;

d.  failing to pay Class Members the NYLL for spread of hours pay;

21

e. failing to keep accurate and adequate records of wages paid to Class Members, allowances or other credits taken by Defendants for tools or equipment, and hours worked by Class Members as required by the FLSA and the NYLL;

f. failing to comply with the posting and/or notice requirements of the FLSA and the NYLL;

156. Upon information and belief, Defendants' unlawful conduct described in this First Amended First Amended Complaint has been pursuant to a corporate policy or practice of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

157. Defendants' unlawful conduct has been widespread, repeated, and consistent.

158. Defendants' unlawful conduct, as set forth in this First Amended Complaint, has been intentional, willful, and in bad faith, and has caused significant damages to Class Members.

159. Defendants were aware or should have been aware that the practices described in this First Amended Complaint were unlawful. Defendants have not made a good faith effort to comply with the law with respect to the compensation of Class Members.

160. Because Defendants' violations of the FLSA have been willful a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

161. Defendants' deceptive conduct - including, but not limited to, taking steps to lead Class Members to believe that they were independent contractors and not employees - prevented Class Members from discovering or asserting their claims any earlier than they did.

162. As such, Class Members are entitled to equitable tolling.

**Supervision and Control of Class Members**

163. Defendants have had the power to hire and fire Class Members.

22

164. Defendants have supervised and controlled Class Members' schedules and conditions of work.

165. Defendants have implemented rules that governed Plaintiff's and Class Members' working conditions.

166. Among other things, Defendants have required Class Members to:

167. work a minimum of five shifts per week;

168. work on certain days of the weeks and at certain times according to a schedule;

169. be penalized financially if they arrive late to work;

170. wear certain types of uniforms;

171. sign in when arriving for their shift and sign out upon leaving; and

172. log their hours with the EZ Clocker mobile app that Defendants use to track their location by, upon information and belief, geofence technology, and be paid by email check;

173. Defendants determined the rate and method of payment of Class Members, including but not limited to the hourly rate and the fact that the Class Members would not receive any overtime compensation.

174. Defendants maintained employment records for Class Members.

175. Defendants' classification of Plaintiff and the Class Members as independent contractors was a sham.

176. The workforce was economically dependent on Defendants for work, performed integral services to Defendants' core business, exercised no managerial discretion, made no capital investment, and was subject to Defendants' control over their schedule, pay, and job assignments.

177. Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

178. Defendants did not keep accurate records of wages earned, overtime compensation owed, pay owed for spread of hours, or of hours actually worked by Plaintiff.

179. Defendants failed to furnish Plaintiff with proper annual wage notices, as required by the NYLL.

180. Defendants failed to furnish Plaintiff with a proper statement with every payment of wages, as required by the NYLL.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act - Minimum Wages
### (Brought on behalf of Plaintiff and the FLSA Collective)

181. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

182. Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this First Amended Complaint.

183. Plaintiff has consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

184. At all times relevant, Plaintiff and the FLSA Collective were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.,* and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

185. At all times relevant, Plaintiff and the FLSA Collective were or have been employees within the meaning of 29 U.S.C. §§ 201 *et seq.*

186. At all times relevant, Defendants have been employers of Plaintiff and the members of the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

187.    The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.,* and the supporting federal regulations, apply to Defendants and protect Plaintiff and the members of the FLSA Collective.

188.    Defendants have failed to pay Plaintiff and the members of the FLSA Collective the minimum wages to which they are entitled under the FLSA for hours worked over 40 during a weekly pay period.

189.    Defendants' unlawful conduct, as described in this First Amended Complaint, has been willful and intentional.

190.    Defendants were aware or should have been aware that the practices described in this First Amended Complaint were unlawful.

191.    Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the members of the FLSA Collective.

192.    Records, if any exist, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective are in the possession and custody of the Defendants.

193.    Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, Plaintiff will then seek leave of Court to amend this First Amended Complaint to set forth the precise amount due

194.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

195.    As a direct and proximate result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of

25

such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION
### Fair Labor Standards Act - Overtime Wages
**(Brought on behalf of Plaintiff and the FLSA Collective)**

196.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

197.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.,* and the supporting federal regulations, apply to Defendants and protect Plaintiff and the members of the FLSA Collective.

198.    Defendants required Plaintiff and similarly situated workers to work in excess of 40 hours per week.

199.    Defendants tracked workers' hours through the EZ Clocker application and therefore knew the actual hours worked.

200.    Despite this knowledge, Defendants failed to pay overtime compensation at one and one-half times the regular rate for hours worked over 40.

201.    Defendants' failure to pay overtime resulted from Defendants' uniform policy of capping paid hours at 40 per week.

202.    Defendants have failed to pay Plaintiff and the members of the FLSA Collective the premium overtime wages to which they are entitled under the FLSA for all hours worked beyond 40 per workweek.

203.    Defendants' unlawful conduct, as described in this First Amended Complaint, has been willful and intentional.

204.     Defendants were aware or should have been aware that the practices described in this First Amended Complaint were unlawful.

205. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff and the members of the FLSA Collective.

206. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

207. As a direct and proximate result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

### THIRD CAUSE OF ACTION
**NYLL - Minimum Wages**
**(Brought on behalf of Plaintiff and the Rule 23 Class)**

208. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

209. Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this First Amended Complaint.

210. At all times relevant, Plaintiff and the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiff and the Rule 23 Class within the meaning of the NYLL §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations.

211. At all times relevant, Plaintiff and the Rule 23 Class have been covered by the NYLL.

212. The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants, and protect Plaintiff and the Rule 23 Class.

213.    Defendants have failed to pay .Plaintiff and the Rule 23 Class the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

214.    Pursuant to the NYLL, Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiff and the Rule 23 Class the full minimum wage at a rate of: (a) $15.00 per hour for all hours worked from December 31, 2018 to December 31, 2023; and (b) $16.50 per hour for all hours worked from January 1, 2024 through December 31, 2025; and (c) $17.00 per hour for all hours worked from January 1, 2026 through the present.

215.    Through their knowing or intentional failure to pay minimum hourly wages to Plaintiff and the Rule 23 Class, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq*.

216.    Due to Defendants' willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and prejudgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
### NYLL - Unpaid Overtime
### (Brought on behalf of Plaintiff and the Rule 23 Class)

217.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

218.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiff and the Rule 23 Class.

219. Defendants have failed to pay Plaintiff and the Rule 23 Class the premium overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations for all hours worked beyond 40 per workweek.

220. Defendants have failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Plaintiff and the Rule 23 Class.

221. Through their knowing or intentional failure to pay Plaintiff and the Rule 23 Class overtime wages for hours worked in excess of 40 hours per workweek, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations.

222. Due to Defendants' willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## FIFTH CAUSE OF ACTION
### FLSA – Untimely / Failure to Promptly Issue Payment of Wages
### (Brought on behalf of Plaintiff and the FLSA Collective)

223. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

224. The FLSA provides that "every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce... wages at the following rates…" U.S.C. § 206(a).  *See* 29 C.F.R. § 790.21(b) and 29 C.F.R. § 778.106.

225. The FLSA implicitly requires that wages be promptly paid when due.

226. Defendants have failed to pay Plaintiff and the FLSA Collective timely wages on a weekly basis when wages were due, sometimes delaying payments by several weeks and months.

227.    Defendants had, and continue to have, a policy of practice of refusing to promptly pay Plaintiff and the FLSA Collective for all hours worked, often paying weeks and months late.

228.    Through their knowing or intentional failure to pay Plaintiff and the members of the FLSA Collective timely pay, Defendants have willfully violated the FLSA and the supporting U.S. Department of Labor Regulations.

229.    Due to Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective are entitled to recover from Defendants their delayed wages, liquidated damages as provided for by the FLSA, reasonable attorneys' fees, costs, and prejudgment and post-judgment interest.

### SIXTH CAUSE OF ACTION
### NYLL – Untimely / Failure to Promptly Issue Payment of Wages
### (Brought on behalf of Plaintiff and the Rule 23 Class)

230.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

231.    Defendants have failed to pay Plaintiff and the Rule 23 Class timely wages on a weekly basis when wages were due, sometimes delaying payments by several weeks and months.

232.    Defendants were required to pay Plaintiff wages on a weekly basis pursuant to NYLL § 191.

233.    Through their knowing or intentional failure to pay Plaintiff and the Rule 23 Class timely pay, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations.

234.    Due to Defendants' willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants their delayed wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and prejudgment and post-judgment interest.

## SEVENTH CAUSE OF ACTION
### NYLL - Spread-of-Hours Pay
### (Brought on behalf of Plaintiff and the Rule 23 Class)

235.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

236.    Defendants have failed to pay Plaintiff and the Rule 23 Class additional compensation of one hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the beginning and end of their workday – including working time plus time off for meals plus intervals off duty - was greater than 10 hours.

237.    Through their knowing or intentional failure to pay Plaintiff and the Rule 23 Class spread-of-hours pay, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations.

238.    Due to Defendants' willful violations of the NYLL, Plaintiff and the Rule 23 Class are entitled to recover from Defendants their unpaid spread-of-hours wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and prejudgment and post-judgment interest.

## EIGHTH CAUSE OF ACTION
### NYLL - Failure to Provide Proper Annual Wage Notices
### (Brought on behalf of Plaintiff and the Rule 23 Class)

239.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

240.    Defendants have willfully failed to furnish Plaintiff and the Rule 23 Class with wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, at the time of hiring, and on or before each subsequent year of the employee's employment with the employer, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging

31

allowances; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

241. Through their knowing or intentional failure to provide Plaintiff and the Rule 23 Class with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.,* and the supporting New York State Department of Labor Regulations.

242. Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiff and the Rule 23 Class are entitled to statutory penalties of fifty dollars for each workweek that Defendants failed to provide Plaintiff and the Rule 23 Class with wage notices, or a total of twenty-five hundred dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b).

## NINETH CAUSE OF ACTION
### NYLL - Failure to Provide Proper and Accurate Wage Statements
### (Brought on behalf of Plaintiff and the Rule 23 Class)

243. Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

244. Defendants have willfully failed to furnish Plaintiff and the Rule 23 Class with statements with every payment of wages as required by NYLL, Article 6, § 195(3), listing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

245.    In violation of the Wage Theft Protection Act incorporated into NYLL, Defendants knowingly and willfully operated with an unlawful policy of refusing and failing to provide wage notices to Class Members at the beginning of their employment with Defendants.

246.    Defendants further violated the WTPA by failing and refusing to provide Class Members with accurate and complete wage statements.

247.    Courts have repeatedly held that wage statements which do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp.*, 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp.*, 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

248.    By failing to provide legally compliant wage statements and wage notices, Defendants violated statutory requirements enacted by the New York State Legislature to protect employees and thereby caused Class Members concrete harm to legally cognizable interests.

249.    Defendants' violations caused actual harm to the Class Members, not merely a risk of harm.

250.    By failing to provide wage notices and wage statements that accurately reflected all hours worked and the applicable rates of pay – including overtime hours and overtime rates –

33

Defendants deprived Class Members the basic information necessary to understand, verify, and challenge the wages they were paid.

251. This lack of transparency enabled Defendants to conceal their unlawful pay practices, delayed Class Members' ability to obtain the compensation they were owed, and left Class Members with no practical means of redress other than filing this action.

252. In doing so, Defendants prolonged the underpayment of wages to low-wage workers whom federal and state labor laws are specifically designed to protect.

253. If Defendants' wage statements had accurately reported the total number of hours Class Members actually worked, as required by law, Defendants would have been forced to confront one of two realities: either (a) pay wages that matched the hours worked, or (b) disclose on the face of the wage statement that the wages paid did not correspond to the hours actually worked.

254. In either case, Class Members would have been placed in a position to recognize and enforce their rights under the NYLL.

255. By concealing the true hours worked, Defendants deprived Class Members of that opportunity, resulting in concrete injury.

256. Defendants' failure to provide proper wage notices and wage statements has contributed to ongoing delays in the payment of wages owed to Class Members.

257. As a result of these delays, Class Members have experienced financial hardship, including difficulty paying routine bills and other financial obligations.

258. By understating the number of hours worked, Defendants necessarily understated the wages reflected on Class Members' wage statements.

259. That understatement did not stop at the paystub.

260.    Because the wage information reported to tax authorities is derived from those same payroll records, Defendants' practice of underreporting hours also resulted in the underreporting of Class Members earnings to the IRS – particularly where, as here, Defendants intentionally misclassified Class Members as independent contractors.

261.    By knowingly failing to provide Class Members with wage statements that accurately reflected their hours worked and wages paid, Defendants willfully violated Article 6 of the New York Labor Law, §§ 190 et seq., and the applicable New York State Department of Labor regulations.

262.    Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Class Members are entitled to statutory penalties of one hundred dollars for each workweek that Defendants failed to provide Class Members with accurate wage statements, or a total of twenty-five hundred dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(l-d).

**TENTH CAUSE OF ACTION**
**FLSA and NYLL - Retaliation**
**(Brought on behalf of Plaintiff)**

263.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

264.    At all relevant times, Plaintiff was an employee of Defendants within the meaning of the FLSA and NYLL, and was a person covered by and intended to benefit from the provisions of said wage and hour laws.

265.    Section 15(a)(3) of the FLSA provides that it is a violation to "discharge or in any other manner discriminate against any employee because such employee has filed any First Amended Complaint […] under or related to this Act."

266.    In addition, NYLL § 215(1)(a) states, in pertinent part:

35

No employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee (i) because such employee has made a First Amended Complaint to his or her employer, or to the commissioner or his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter, or any order issued by the commissioner. . . .

267.    Plaintiff engaged in protected activity by complaining to Defendants about unpaid and unnecessarily delayed wages and overtime, underpayments of the same, and illegal policies of failure to pay wages and time-shaving.

268.    Defendants were aware of Plaintiff's protected activity.

269.    Defendants threatened Plaintiff who complained about unpaid wages.

270.    Shortly after Plaintiff complained about unpaid and overdue wages and refused to continue uncompensated work, Defendants terminated Plaintiff's employment.

271.    Defendants willfully violated Plaintiff's rights under the FLSA and NYLL by retaliating against Plaintiff by terminating his employment after asserting his rights under the FLSA and NYLL.

272.    As a direct and proximate result of Defendants' willful disregard of the FLSA and NYLL, Plaintiff suffered damages in the form of lost earnings and egregious emotional distress.

273.    Plaintiff seeks all applicable remedies under the law, including compensatory damages, punitive damages, damages for egregious emotional distress, back pay, front pay, and attorneys' fees and costs.

## ELEVENTH CAUSE OF ACTION
**Claims for Construction Industry Wage Theft Liability Under NYLL § 198-e**
**(Brought on behalf of Class Members Against General Contractor Defendants)**

274.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

36

275.    Upon information and belief, the General Contractor Defendants each made or took one or more construction contracts and utilized subcontracted labor, including labor supplied by OMTA, in connection with construction work performed by Class Members.

276.    Upon information and belief, OMTA acted as a subcontractor at one or more tiers under, by, or for JRM, Clune, and/or Michilli on projects including but not limited to 610 Fifth Avenue, Manhattan, 717 Fifth Avenue, Manhattan, the Penn Station / Penn Plaza project, and the Hudson Yards project.

277.    Class Members performed labor on those projects and suffered wage-and-hour violations caused by OMTA, including but not limited to unpaid wages, unpaid overtime, off-the-clock work, untimely payment of wages, unlawful deductions, and related statutory violations.

278.    Pursuant to NYLL § 198-e, General Contractor Defendants are liable for any debt resulting from actions under NYLL § 198 incurred by subcontractors at any tier acting under, by, or for them in connection with Class Members' performance of labor.

279.    Accordingly, General Contractor Defendants are jointly and severally liable to Class Members for all wages, damages, liquidated damages, statutory penalties, attorneys' fees, costs, interest, and such other legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

280.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

## TOLLING OF THE STATUTE OF LIMITATIONS

281.    Plaintiff repeats and realleges all preceding paragraphs as if fully set forth herein.

Class Action Amended Complaint OmTa - Final 4.30.26 4919-8859-9719 v.1

282. Upon information and belief, Defendants knew that Class Members were entitled to proper minimum wages and overtime compensation, and knowingly and maliciously violated the FLSA and NYLL.

283. Upon information and belief, Defendants concealed from Class Members their rights to receive minimum wages and overtime compensation.

284. Upon information and belief, Defendants failed to provide Class Members with notice of their rights to receive minimum wages and overtime compensation.

285. Because Defendants, upon information and belief, have concealed from Class Members notice of their rights to receive minimum wages and overtime compensation as required by FLSA, discussed *supra*, the claims of Class Members for, among other violations, unpaid minimum wage and overtime compensation, statutory damages, and other relief, may extend beyond the statute of limitations for violations of the FLSA and NYLL on the grounds of equitable tolling.

**WHEREFORE,** Plaintiff, individually, and on behalf of all other similarly situated persons, respectfully request that this Court grant the following relief:

A. An Order tolling the statute of limitations;

B. Authorizing Plaintiff at the earliest possible time to give physical and electronic notice of this collective action to all electrician tradespersons including electricians and apprentices who are presently working, or have at any time during the six years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked for OMTA. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper regular and overtime wages;

38

Class Action Amended Complaint OmTa - Final 4.30.26 4919-8859-9719 v.1

C.  Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the FLSA Collective;

D.  Unpaid minimum wages, overtime pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

E.  Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

F.  Designation of Plaintiff as representative of the Class Members, and counsel of record as Class Members' Counsel;

G.  Payment of reasonable service award(s) to Plaintiff, in recognition of the services he has rendered and will continue to render to the FLSA Collective and Rule 23 Class, and the risks he has taken on behalf of the FLSA Collective and Rule 23 Class;

H.  Awarding Plaintiffs all relief available under NYLL § 198-e against JRM, Clune, and Michilli, including unpaid wages, liquidated damages, statutory penalties, attorneys' fees, costs, interest, and such other relief as the Court deems just and proper.;

I.  Issuance of a declaratory judgment that the practices complained of in this First Amended Complaint are unlawful under the FLSA and NYLL, Article 6, § § 190 *et seq.,* NYLL, Article 19, § § 650 *et seq.,* and the supporting New York State Department of Labor Regulations;

Class Action Amended Complaint OmTa - Final 4.30.26 4919-8859-9719 v.1

J.  An award of unpaid compensation due to Defendants' illegal time-shaving policies, due under the FLSA and NYLL;

K.  An award of unpaid compensation due to Defendants' illegal policies regarding the failure and refusal to provide spread-of-hours pay pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

L.  An award of liquidated damages as a result of Defendants' willful failure to pay all wages pursuant to the FLSA or NYLL;

M.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to provide spread-of-hours premium pay pursuant to NYLL;

N.  Statutory penalties of up to $5,000 per Class Member for Defendants' failure to provide Class Members with proper annual wage notices, as provided for by NYLL, Article 6 § 198;

O.  Statutory penalties of up to $5,000 per Plaintiff and/or Class Member for Defendants' failure to provide Class Members with proper wage statements that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, as provided for by NYLL, Article 6 § 198;

P.  Prejudgment and post-judgment interest, costs and expenses of this action, together with reasonable attorneys' fees and expert fees;

Q.  An award of back pay, front pay, compensatory damages, punitive damages, damages for egregious emotional distress, and all other penalties the Court deems appropriate as a result

of Defendants' willful retaliatory conduct against Plaintiff, pursuant to the NYLL and FLSA; and

R.  Providing that if any amount remains unpaid upon the expiration of 90 days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

S.  Such other relief as this Court shall deem just and proper.

Dated: New York, New York
        April 30, 2026

Respectfully,

*Joseph Bonomo*

Joseph M. Bonomo, Esq.
**PITTA LLP**

120 Broadway, 28ʰ Floor
New York, New York 10271
Telephone: (212) 652-3890
Facsimile (212) 652-3891

*Attorneys for Plaintiff and the*
*Putative FLSA Collective and Rule 23 Class*

41